Dye, J.
The People have appealed, by permission, from an order of the Appellate Division, Second Judicial Department, affirming, by a divided court, an order of the Kings County Court, dismissing an indictment as against the above-named respondent and exonerating his bail.
The indictment charges the respondent (and Melvin Mittman) with the crime of manslaughter in the second degree committed as follows:1 ‘ The defendants, acting in concert and each aiding and abetting the other, on or about August 6,1954, in the County of Kings, without a design to effect the death, in the heat of passion, struck and beat Rheinhold Peter Ulrickson with their fists causing him to sustain injuries as a result of which the said Rheinhold Peter Ulrickson died on August 7, 1954, said act not being justifiable or excusable. ’ ’
The record contains the Grand Jury minutes. The motion to dismiss the indictment was made on the theory that the evidence before the Grand Jury was insufficient to support the allegations of the indictment within the meaning of section 251 of the Code of Criminal Procedure since, in any event, a conviction by a trial jury could not be had for the reason that the indictment, as drawn, charging as it does a crime committed “ in the heat of passion” precludes proof of “ aiding and abetting the others ”.
According to the evidence on record, the respondent, then aged 17 years, at about 4:00 p.m. on August 6,1954, met Mittman and one other boy in a motion picture theatre. Mitt-man and one of the others told the respondent and a third boy a lurid story of how they had gone out on several occasions beating up tramps and vagrants. When the respondent expressed disbelief, Mittman suggested he go along and see for himself. That evening between 9:00 and 9:30 o’clock the four boys met near Lieberman’s home and walked to Triangle Park near the Williamsburg Bridge, borough of Brooklyn, arriving at about 10 o’clock, looking for tramps they might beat up. They found no tramps so continued on to South 5th and Rodney Street. *652 There they came to a partly demolished house and saw ‘1 a gray-haired man ” later identified as John Perrett, sitting on the porch. Mittman directed him to stand up and when he did, punched him—the others, including this defendant, joined in and also punched the victim until he fell to the sidewalk in a daze, bleeding profusely. When subsequently asked by a police officer why he did it, Lieberman replied ‘ ‘ I didn’t want to be left out, I didn’t want to be called ‘chicken’”. While the victim was lying on the sidewalk, a ‘ ‘ drunk ’ ’ named Bheinhold Peter Ulrickson came along on the opposite sidewalk. He was carrying a paper bag which looked as if it contained a quart beer bottle. Ulrickson recognized Perrett and ran to his aid. An altercation ensued between him and the boys in the course of which the ‘ ‘ drunk ’ ’ raised the bottle above his head. Mitt-man punched him. He went down, striking the back of his head on the edge of the sidewalk. The witnesses agree that Lieberman did not hit Ulrickson — he did not need to — he had been knocked out by Mittman. The boys then walked away, going to the Sunset Restaurant. Ulrickson died a few hours later without regaining consciousness. It was for his death that this indictment was returned.
Such evidence, unless explained or contradicted, points to the fact that the defendants acted in concert, that each aided and abetted the others in a plan or scheme to beat up ‘ ‘ tramps and vagrants ” which, when set in motion, proceeded without interruption until “ without a design to effect death, in the heat of passion, [the defendants] struck and beat Bheinhold Peter Ulrickson with their fists causing him to sustain injuries ” as the result of which he died, after which this respondent and his companions walked calmly away. A trial jury might reasonably conclude that Lieberman was a willing and active participant from start to finish. The law is clear that under such circumstances a participant must be deemed a party to the act committed (People v. Chapman, 224 N. Y. 463) for it cannot reasonably be said that under the circumstances Lieberman had wholly and effectively detached himself from the criminal enterprise in advance of the fatality (People v. Nichols, 230 N. Y. 221). It is equally well established, both here and in sister States, that a person is presumed to intend the natural consequences of his act (Darry v. People, 10 N. Y. 120; Ruloff v. People, 45 N. Y. 213; Foster v. People, 50 N. Y. 598; Lyons v. State, 30 Tex. Cr. *653 Rep. 642; Reeves v. Territory, 10 Okla. 194; Brennan v. People, 15 Ill. 511; Stephens v. State, 42 Ohio State 150; Mitchell v. Commonwealth, 74 Va. 845; 1 Warren on Homicide, p. 233; Wharton on Homicide [3d ed.], § 418; 22 C. J. S., Criminal Law, § 87, p. 155).
It can no longer be doubted that one who aids and abets the common purpose is as guilty as the one who strikes the fatal blow. This is so at common law and by statute (Penal Law, § 2; People v. Udwin, 254 N. Y. 255; People v. Flanigan, 174 N. Y. 356). It is a principle regularly applied in cases where death is a foreseeable result of the use of force (People v. Emieleta, 238 N. Y. 158; People v. Friedman, 205 N. Y. 161; People v. De Mino, 305 N. Y. 862; People v. Wilson, 145 N. Y. 628) and has been followed in other jurisdictions. Thus in State v. Finley (118 N. C. 1161), the defendant and his coconspirator were held liable for causing the death of a deceased whom they had planned “ to worry ” by a blow on the head. Likewise, where a defendant had intended ‘1 to beat up ’ ’ the deceased, he was held guilty of murder although no such result was contemplated (Mitchell v. State, 36 Tex. Cr. Rep. 278). The same result was reached in another State where death resulted from a planned “ whipping ” (State v. Munchrath, 78 Iowa 268).
Considered in light of the above, the proof adduced before the Grand Jury in the case at bar, if unexplained and uncontradicted, would warrant a conviction by a trial jury and is, accordingly, sufficient to support the indictment (Code Crim. Pro., § 251).
Must the indictment, nonetheless, be dismissed because the proof necessary to establish that the defendants, “ acting in concert and each aiding and abetting the other ”, necessarily excludes for mutual inconsistency proof that the crime was committed ‘ ‘ without a design to effect the death, in the heat of passion ”1 In other words that the proof essential to establish a killing in the heat of passion necessarily contradicts conspiracy which depends on premeditation. We think not. As we read the indictment, the conspiracy here charged is not to commit manslaughter but rather to commit an assault which, because death resulted, amounts to manslaughter in the second degree, the assault being not by a dangerous weapon or by cruel or unusual means (Penal Law, § 1052, subd. 2).
*654 Here the proof is clear that the defendant not only set out with the others to “ beat up tramps and vagrants ” but that he participated in such beatings and made no effort to withdraw prior to the assault upon Ulrickson. It cannot be said that the death of the deceased was other than the natural and probable consequence of the plan “ to beat up tramps”. If the testimony, as above, is credited, each person so acting in concert is chargeable with the consequence of such action even though the result — death to the victim—was unexpected and formed no part of the original scheme.
As we read the indictment, it meets the requirements of the statute.
Chief Judge Conway and Judges Desmond, Fuld, Froessel, Van Voorhis and Burke concur.
Orders reversed and the indictment reinstated.