John LAFARY and Dixie Lafary, Appellants (Defendants Below),

v.

Inez H. LAFARY, Appellee (Plaintiff Below).

No. 29A02–8701–CV–33.

Court of Appeals of Indiana, Second District.

May 10, 1988.

Gustin J. Raikos, Indianapolis, for appellants.

Richard J. Hartman, Hartman & Foutty, Indianapolis, for appellee.

SULLIVAN, Judge.

Defendants John and Dixie Lafary (John) appeal a judgment and order for their ejectment from real estate now solely owned by John's mother, Inez Lafary (Inez). The thrust of John's argument is that the court erroneously excluded parol evidence of a contract between his father, Omer Lafary (Omer), now deceased, and John, pertaining to the land at issue. Then for lack of evidence of the contract's existence, John argues, the court failed to require specific performance by Inez. In the alternative, John claims he was denied damages recoverable under the theory of quasi-contract for real estate improvements made and services rendered for the benefit of Omer and Inez.

We affirm.

Omer and Inez, John's parents, owned the farm property at issue as tenants by the entireties. In 1971, John moved a trailer onto or adjacent to the property, made improvements to the site, and resided there rent and tax free for at least ten years. John claims, though there is conflicting evidence, that in those years he provided for his parents a variety of services, including continual care for his parents' cattle both prior to and following Omer's death in 1979. John also claims he acted in reliance on an oral contract with Omer by which John, upon the deaths of both Omer and Inez, would receive the disputed property in return for his services.

John correctly asserts that his testimony as to his oral contract with Omer was improperly excluded, though he focuses on grounds for error which are not pertinent to the trial court's ruling. The court did not rely on the dead man's statutes, the applicability of which John refutes, but it did erroneously sustain an objection to the testimony as hearsay. Utterances of contract are not hearsay:

"Where the *utterance of specific words* is itself *a part of the details of the issue under the substantive law and the pleadings*, their utterances may be proved without violation of the hearsay rule, because they are not offered to evidence the truth of the matter that may be asserted therein.... The *making of a contract* necessarily involves utterances by conversation, letter, telegram, and the like; and these are admissible under the issue...." 6 *J. Wigmore, Wigmore on Evidence* § 1770 (Chadbourn rev. 1981) (emphasis in the original); *see also Porter v. Waltz* (1886) 108 Ind. 40, 8 N.E. 705.

However, we do not find the trial court's ruling to have caused the substantial prejudice required for reversal. The issue here is not whether John had a contract with Omer, but whether Inez would be bound by such an agreement if it existed.[1] As the trial court determined, Inez would not be bound. Thus proof of the existence of the contract would not impact the court's decision.[2]

In reviewing the trial court's conclusion as to Inez's liability, we treat this case as

---

1. For clarification, we note that John in his brief takes issue with "the Trial Court's Finding that there was 'no oral argument between Omer Lafary and John Lafary for the testamentary disposition of real estate.'" Appellants' Brief at 41. No such finding was made. The finding apparently referred to reads: "There was no oral agreement between Omer Lafary *and Inez H. Lafary* with John S. Lafary or Dixie L. Lafary for the testamentary disposition of real estate owned by Omer I. Lafary *and* Inez H. Lafary...." Record at 255 (emphasis supplied). The words emphasized transform the focus of the arguments.

2. For this same reason, we need not address John's assertion that the alleged contract fell outside the purview of the Statute of Frauds.

one decided by a general judgment supported by partial findings, pursuant to Ind. Rules of Procedure, Trial Rule 52(D). We must affirm if the judgment is sustainable on any theory, so long as that theory does not conflict with any of the trial court's findings. *In re Adult Protective Services for Hartman* (1987) 1st Dist. Ind.App., 518 N.E.2d 482; *McClamroch v. McClamroch* (1985) 4th Dist. Ind.App., 476 N.E.2d 514.

It is undisputed that Inez and Omer owned the property at issue as tenants by the entireties. Property so held creates an estate owned by the husband and wife as a single entity. *Bayes v. Isenberg* (1981) 1st Dist. Ind.App., 429 N.E.2d 654. The husband and wife have no separable interest in the estate. *Wienke v. Lynch* (1980) 2d Dist. Ind.App., 407 N.E.2d 280. Neither may bind the other to a contract entered into with a third party and pertaining to the property, unless "the contracting spouse is authorized, or the non-contracting spouse ratifies the act." *McIntosh v. Turner* (1985) 3d Dist. Ind.App., 486 N.E.2d 565, *reh. denied* 489 N.E.2d 116; *see also Bayes v. Isenberg, supra.*

John argues that Inez is bound because she authorized Omer to enter the contract or at the least ratified the act, as evidenced by her provision for John in her will and by her continued acceptance of John's services after Omer's death. The trial court, however, specifically found that Inez did not know of, consent to, or acquiesce in any contract for the farm to which John and Omer may have been parties. We may not disregard the trial court's finding unless it is clearly erroneous. *Houin v. Bremen State Bank* (1986) 3d Dist. Ind.App., 495 N.E.2d 753.

Inez testified that John moved onto the farm for personal reasons, that Inez had no knowledge of any contract between Omer and John, that she did not intend for her devise in the will to reflect or satisfy any contractual obligation, and that she did not know of any services John performed as consideration for the alleged contract. Inez's testimony was corroborated by that of the other seven of her children. Thus there was sufficient evidence upon which

the trial court could base its determination of fact. *See Stone v. Manship* (1987) 4th Dist. Ind.App., 505 N.E.2d 155.

■ In summary, Inez and Omer owned the property at issue as tenants by the entireties. Inez was not a party to any alleged contract between John and Omer concerning the jointly owned land, nor did she authorize or ratify such a contract. Therefore she cannot be bound by the agreement. John is not entitled to specific performance.

■ In the alternative, John seeks recovery in quantum meruit for his services and for improvements to the real estate he occupied. The trial court entered a finding, adequately supported by the testimony of Inez and her seven children, that John's labor and improvements "were for the sole convenience of [John and his wife Dixie] and were done at their sole discretion and not in furtherance of any agreement between [John] and Omer ... or ... Inez." Record at 255. To this finding we will apply quasi-contract and landlord-tenant principles. *See Stone v. Manship, supra,* 505 N.E.2d 155; *Houin v. Bremen State Bank, supra,* 495 N.E.2d 753.

Under the theory of quasi-contracts the court may impose liability, though the parties have not mutually assented to a contract, to prevent one party's unjust enrichment at the expense of the other. *Biggerstaff v. Vanderburgh Humane Society, Inc.* (1983) 4th Dist. Ind.App., 453 N.E.2d 363; *Indianapolis Raceway Park, Inc. v. Curtiss* (1979) 1st Dist., 179 Ind.App. 557, 386 N.E.2d 724. This liability is premised on one party's rendition of benefits on the other party's behalf. *See Hartke v. Moore–Langen Printing and Publishing Co., Inc.* (1984) 4th Dist. Ind.App., 459 N.E. 2d 430; *Carroll v. Reed* (1982) 2d Dist. Ind.App., 436 N.E.2d 864. The trial court's determination that John acted on his own rather than his mother's behalf precludes recovery for his improvements and services; John could not reasonably contemplate compensation under such circumstances, nor should Inez have reasonably believed he expected compensation. *Biggerstaff v.*

*Vanderburgh Humane Society, Inc., supra.*[3]

Recovery for John's improvements to the real estate is precluded not only by quasi-contract principles but by the rules governing landlord-tenant relationships. The trial court properly found John to be a tenant at sufferance,[4] as defined in *Jump v. Pilgrim Properties, Inc.* (1947) 118 Ind.App. 164, 166, 75 N.E.2d 165, 166, (quoting *School Dist. No. 11 v. Batsche* (1895) 106 Mich. 330, 334, 64 N.W. 196, 197):

> " '[A] person in possession of land lawfully, who holds over without right, becomes a tenant at sufferance, if the owner suffers him to remain in possession a sufficient length of time to imply an intentional acquiescence in the occupancy, and it is not necessary that the previous holding be that of a tenant.' "

John as a tenant may not charge Inez, his landlord, for improvements to the property in the absence of an express contract. *Johnson v. Pritchard* (1930) 91 Ind.App. 499, 171 N.E. 667; *Harry v. Harry* (1891) 127 Ind. 91, 26 N.E. 562.

Affirmed.

BUCHANAN and HOFFMAN, JJ., concur.

---

3. John appears to designate "implied contract" as a separate theory under which he seeks relief. Technically, an implied contract is a contract implied in fact, a true contract in that both parties have assented though not expressly. 1 *W. Jaeger, Williston on Contracts* § 3. As we have already determined, Inez may not be bound by a true contract. Indiana courts also frequently invoke the term "implied contract" when referring to contracts implied in law. The theory of implied contract used in this sense does not differ from the theory of quasi-contract. *Biggerstaff v. Vanderburgh Humane Society, supra,* 453 N.E.2d 363; 1 *Williston on Contracts, supra.*

4. John, interpreting I.C. 32–7–1–2 (Burns Code Ed.Repl.1980) on tenancies at will, asserts that the concept of tenancy at sufferance is no longer valid in Indiana. We note that I.C. 32–7–1–7 (Burns Code Ed.Repl.1980) evidences the concept's continued viability, as does recent case law. *See Slusher v. State* (1982) 3d Dist. Ind. App., 437 N.E.2d 97.